CATALINO AYENDE, conocido por CATALINO PIZARRO AYENDE, ET ALS., demandantes y apelantes, *v.* RICARDA AYENDE, conocida por RICARDA MERCADO AYENDE, ET ALS., demandados y apelados.

No. 6701.—*Sometido:* Enero 23, 1935. *Resuelto:* Febrero 27, 1936.

A. *Marín Marién,* abogado de los apelantes; *C. Iriarte* y *F. Fernández Cuyar,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

Los demandantes iniciaron un recurso para que se anulara un testamento por varios motivos, todos los cuales a excepción de uno, han abandonado en la presente apelación. Los señalamientos primero y segundo leen así:

*"Primero:* La corte erró al omitir hacer conclusión alguna, como no la hizo, respecto a la causa de nulidad alegada en el apartado C del párrafo 9 de la demanda, o sea, la de que el testamento no fué hecho a iniciativa de la causante, sino de otra persona, y que no fué leído a dicha causante, sobre la cual causa se presentó evidencia suficiente para sostenerla.

*"Segundo:* La corte erró al declarar que la prueba es insuficiente para sostener 'la tercera causa de nulidad', como lo declaró (no obstante lo expuesto bajo el error primero), es decir, la omisión en hacer conclusión sobre la verdadera causa de nulidad alegada en el apartado C del párrafo 9 de la demanda y causa de nulidad que confundió con la de incapacidad mental."

La parte pertinente del párrafo 9 de la demanda lee como sigue:

"9.—Y los demandantes alegan que el testamento otorgado por la

causante María Elías Ayende Andrade, como queda dicho, es nulo y carece de todo efecto y eficacia legal, por las razones siguientes:

. . . . . . . . . .

"C.—Porque el testamento otorgado por dicha María Elías Ayende Andrade no fué dictado por la testadora al notario, ni leído por éste a la misma, y no ser la intención y disposición de última voluntad de dicha María Elías Ayende Andrade expresadas por ella personalmente al notario autorizante, sino que quien tal hizo fué una tercera persona, no pudiendo dicha María Elías Ayende Andrade expresar su última voluntad en esta ocasión por encontrarse postrada en cama sufriendo de senilidad, de cuya enfermedad falleció más tarde, como queda dicho."

Un médico declaró como testigo de los demandantes: que asistió a la testadora María Elías Ayende en mayo de 1908; que su vista era defectuosa; que no oía bien y que padecía de arteriosclerosis; que sus deficiencias de la vista y del oído se debían a la arteriosclerosis; que esta última enfermedad podía tener por consecuencia amnesia y cualquiera de los fenómenos cerebrales que son sostenidos por la circulación cerebral. El testamento fué otorgado en diciembre de 1908, y la testadora murió unos 22 años más tarde. Nada había en la declaración del médico que demostrara que la testadora no estuviera en su sano juicio al momento en que otorgó el testamento.

El juez de distrito en el curso de su relación del caso y opinión dijo:

"Con respecto al tercer motivo de nulidad, la prueba de los demandantes es insuficiente para sostenerlo. Es verdad que según aparece de la prueba, cuando se otorgó el testamento el 16 de diciembre de 1908 la testadora se hallaba enferma, pero la prueba no demuestra que ella no pudiese hablar. Por el contrario, de la prueba de los propios demandantes aparece que ella habló en presencia de los testigos de los demandantes. Su muerte ocurrió más de 22 años después de otorgado el testamento, de modo que la postración en que se hallaba así como la senilidad de que venía sufriendo no eran tan fuertes cuando pudo sobrevivir por más de 22 años. Generalmente los testamentos se otorgan en momentos en que el testador se halla gravemente enfermo, pues son muy raras las personas que gozando de perfecta salud se disponen a otorgar disposición testamentaria.

"El Dr. Zaratt que fué traído por los demandantes como perito médico para demostrar la incapacidad de María Elías Ayende Andrade para testar, declaró que vió a dicha señora antes del mes de mayo de 1908. Que está seguro que no la vió después de dicha fecha porque en la fecha antes indicada se marchó el testigo para la isla donde fijó su residencia. Que al visitarla encontró que padecía de arteriosclerosis, estaba algo sorda y tenía falta de visión. Este examen tuvo efecto, como antes hemos dicho, antes del mes de mayo de 1908 y el testamento se otorgó en el mes de diciembre del mismo año. Repreguntado por la parte contraria manifestó el doctor que la enfermedad de que padecía la señora Ayende 'puede' afectar su capacidad mental.

"Tal prueba es claramente insuficiente para demostrar la incapacidad de la testadora al tiempo de otorgar el testamento. En primer término, el examen no se hizo en el momento de otorgarse la disposición testamentaria, sino 7 u 8 meses antes. El hecho de que una enfermedad pueda afectar la capacidad mental del paciente, tampoco lo incapacita para testar, aún suponiendo que padezca de dicha enfermedad en el momento de otorgar el testamento, pues lo que debe probarse no es la posibilidad de que el testador esté incapacitado, sino que realmente lo esté al momento de otorgar testamento. Un demente o lunático puede otorgar testamento siempre que lo haga en un período lúcido. Con mucha más razón podía otorgarlo la testadora en este caso cuando ni siquiera se ha demostrado que 7 u 8 meses antes de otorgarse el testamento estuviese realmente incapacitada para ello. Incumbía a los demandantes probar satisfactoriamente este extremo, y no habiéndolo hecho, declaramos que no existe el tercer motivo de nulidad por ellos alegado."

No tenemos a la vista los argumentos en la corte de distrito. En el párrafo C supra, los demandantes dan énfasis a la supuesta incapacidad de la testadora, por razón de su enfermedad, para otorgar testamento. Si en la argumentación los demandantes hubiesen dado énfasis a otros aspectos del referido párrafo C y si hubieran deseado una conclusión más específica respecto a tales aspectos adicionales, debieron haberlo así solicitado. No obstante, hemos examinado la prueba en que ahora descansan los apelantes y en ella no encontramos base satisfactoria para una revocación.

Si no tuviéramos ante nos otra cosa que la prueba, quizá

vacilaríamos en confirmar la sentencia. Empero, el testamento contiene la siguiente aseveración:

"A mi juicio corroborado por el de los testigos verifica doña María Elías Allende Andrade este acto en la integridad de sus facultades mentales sin que medie dolo, violencia, fraude ni otra causa de nulidad y tiene capacidad legal para otorgar testamento. En cuya virtud a presencia de los dichos testigos que la ven, oyen y entienden perfectamente empieza a manifestar su última voluntad y yo el Notario a reducirla a escrito en las cláusulas siguientes:

El párrafo final lee así:

". . . . Presentes la testadora y testigos, al principio nombrados yo el Notario procedo a la lectura en alta voz de este testamento e invito a los circunstantes a que lo lean enterándoles del derecho que tienen de hacerlo por sí propio y la otorgante viéndola, oyéndola y entendiéndola los testigos declara que lo escrito y leído refleja bien y fielmente su voluntad, por lo cual estando conformes testadora y testigos firman todos el presente instrumento con excepción de la otorgante que por manifestar no saber lo hace a su ruego el testigo don Victorio Rodríguez por ante mí el Notario que del conocimiento, profesión y vecindad de la testadora, así como de su edad y estado con relación al dicho de la misma, de haberse observado en este testamento sin interrupción alguna y en un solo acto las formalidades prevenidas por la ley y de cuanto se consigna en este instrumento público doy fe."

Al resolver otras cuestiones de hecho, el juez sentenciador dijo que se requería prueba fuerte y convincente para destruir el efecto de una certificación notarial. En vista de ésta y de otras expresiones similares en su relación del caso y opinión, tenemos poca duda respecto a qué hubiera dicho el juez de distrito de haber hecho una conclusión más específica. No estamos preparados para decir que hubiéramos revocado la sentencia por error manifiesto en la apreciación de la prueba, de haberse hecho tal conclusión. Tampoco debe la sentencia ser revocada por falta de una conclusión más específica o porque parte del testimonio de los demandantes tendía a negar lo que se hizo constar en el testamento y a que parte del testimonio de los demandados era de por sí

·contradictorio y poco persuasivo. Todas estas declaraciones fueron dadas no cuando los hechos estaban frescos en la memoria de los testigos sino unos 25 años más tarde.

El tercer señalamiento se dirige a la cuestión de costas. Tomando todo en consideración estamos convencidos de que no debió haberse condenado a los demandantes al pago de las costas.

*La sentencia apelada debe ser modificada de conformidad, y así modificada, confirmada.*

El Juez Asociado Señor Córdova Dávila no intervino.